[Cite as *In re K.S.*, 2011-Ohio-5981.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

IN THE MATTER OF:                  :
                                   :         Appellate Case No. 2010-CA-56
R.S. and K.S.                      :
                                   :         Trial Court Case Nos. 2009-1772
                                   :                              2009-1775
                                   :
                                   :         (Juvenile Appeal from
                                   :          Common Pleas Court)
                                   :
                 . . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of November, 2011.

. . . . . . . . . . .

ANDREW R. PICEK, Atty. Reg. #0082121, Clark County Prosecutor's Office, 50 East Columbia Street, 4th Floor, Post Office Box 1608, Springfield, Ohio 45501
        Attorney for Plaintiff-Appellee, Clark County Dept. Of Job & Family Services

JAMES GRIFFIN, Atty. Reg. #0015917, 8 North Limestone Street, Suite D, Springfield, Ohio 45502
        Attorney for Appellee, father

MARK A. DETERS, Atty. Reg. #0085094, 371 West First Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant, mother

. . . . . . . . . . . . .

HALL, J.

{¶ 1} N.R. ("Mother") appeals from the trial court's decision and entry granting her former husband, J.S. ("Father"), legal custody of their two children, R.S. and K.S.

{¶ 2} Mother advances two assignments of error on appeal. First, she contends the trial court erred when it failed to comply with the requirements for modifying a prior custody order under R.C. 3109.04(E)(1). Second, she claims the trial court abused its discretion by modifying a prior custody decree.

{¶ 3} The record reflects that the present dispute began as two separate dependency/abuse actions filed by Clark County Children's Services (CCCS). The agency filed the actions in juvenile court on December 4, 2009. At that time, Mother had remarried. She and her new husband, R.R., live in Springfield, Ohio, with six children. The appellee is the father of two of those children, R.S. and K.S. He now lives in Kansas with his new wife and their one child.

{¶ 4} In its two dependency/abuse complaints, CCCS alleged that it had become involved in this case based on allegations of sexual activity between two of the minor children in Mother's household. Although the sexual activity did not involve R.S. and K.S., who then were ten and twelve years old, CCCS requested a finding of abuse or neglect and the issuance of a protective-supervision order. In the body of its complaints, the agency alternatively requested other dispositions.

{¶ 5} The trial court consolidated the two complaints. On December 21, 2009, it made a finding that R.S. and K.S. were dependent children. The trial court then issued an agreed protective-supervision order. The trial court indicated that the order would remain in effect for six months unless modified, extended, or terminated. The trial court also noted that Father had filed a motion seeking legal custody of R.S. and K.S. Finally, the trial court stated that it would hold a dispositional review hearing on or before June 21, 2010.

{¶ 6} Thereafter, on April 19, 2010, the trial court held the promised hearing. After considering the evidence presented, reviewing a guardian ad litem's report, and speaking to R.S. and K.S. privately, the trial court filed a decision and entry in which it repeated its earlier finding that the children were dependent. It then granted Father's motion for legal custody and awarded Mother visitation. This appeal followed.

{¶ 7} On April 26, 2011, we filed a decision and entry clarifying the issues before us, suspending the appeal, and remanding the cause for the trial court to make additional findings. In particular, we clarified the nature of the appeal, rejecting Mother's argument that it did not stem from a dependency complaint. Despite that conclusion, we ultimately agreed with Mother's claim "that the trial court was required to comply with R.C. 3109.04 before granting legal custody to [Father]." We then determined that the trial court had failed to make all of the findings required by R.C. 3109.04(E)(1)(a), which provides:

{¶ 8} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

{¶ 9} "* * *

{¶ 10} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

{¶ 11} In our April 26, 2011 ruling, we reasoned:

{¶ 12} "In the present case, the trial court made no specific reference to R.C. 3109.04. It made no finding of a change in circumstances since the time of the prior custody decree, and it made no finding that the harm caused by a change of environment would be outweighed by the advantages to R.S. and K.S. if [Father] obtained custody.

{¶ 13} "Although we might be tempted to make the foregoing findings on our own, we decline to do so. Based on the record before us, we deem it best that the trial court determine whether either requirement has been met."

{¶ 14} As a result, we suspended Mother's appeal and remanded the cause "for the limited purpose of allowing the trial court to decide whether a change in circumstances exists and whether the benefits from a change of custody outweigh any harm to R.S. and K.S." The trial court responded to our remand with a June 1, 2011 judgment entry in which it made additional findings. Thereafter, we granted both parties leave to file supplemental briefs addressing the trial court's new findings. Having reviewed those briefs, as well as the trial court's original ruling and its additional findings, we turn now to the merits of Mother's appeal.

{¶ 15} In her first assignment of error, Mother contends the trial court failed to comply with the requirements for modifying a prior custody order under R.C. 3109.04(E)(1). In particular, she claims the trial court erred in failing to find: (1) that

there was a change in circumstances for each child and (2) that the harm likely to be caused by a change of environment was outweighed by the advantages of the change. As set forth above, although the trial court's original ruling omitted these findings, we remanded the cause for the trial court to make them. In her supplemental brief, however, Mother asserts that the trial court's most recent judgment entry still failed to include the second finding. As for the first finding, Mother acknowledges that the trial court now has made it. She argues, however, that the evidence fails to demonstrate a change in circumstances.

{¶ 16} Our review of the trial court's most recent ruling reveals that it found a change in circumstances for each child and that the harm likely to be caused by a change of environment was outweighed by the advantages of the change. The evidence supports both findings.

{¶ 17} In its June 1, 2011 judgment entry, the trial court found "repeated and significant changes in circumstances in the home of the mother, and in the circumstances of the children since the prior decree." The trial court addressed those changes as follows:

{¶ 18} "[S]ince the last decree the mother has remarried. In fact, she has indicated through her testimony that she has been married two (2) times, since the divorce from the boys' father. Since the last decree as well, the mother has taken up residence and now lives with a husband that is extremely volatile, angry, and unpredictable. His behavior has caused the home of the mother to be chaotic by her own admission. The mother's home is not safe, stable, or secure. She has repeatedly indicated a desire to separate from her husband. She has even had to

move out of the home that she shares with her husband out of fear. Additionally, her husband had been gone from the home for a period of three (3) months exhibiting the instability and unpredictability that is obvious to all that know [R.R.] She expressed a desire to rectify the instability and unpredictability and chaos in the home, but is [sic] seemingly been unable to do so. In addition, since the last decree, a child in the home of the mother has been sexually abused and had to be removed from the home. This occurred on mother's watch when she was the owner and operator of the home. Since the last decree, it has been determined that one (1) of her children has ADHD and another is bi-polar. Both children are in significant need of counseling services and perhaps medication. One child is flunking in school and the other is very consumed with video games to the point of being distracted. The chaos in the home is causing instability of the lives and emotional well-being of the boys. They crave, need, and deserve a home that is safe, stable, and secure. The mother's home does not offer that. There have been many substantial changes in the lives of the mother and the boys."

{¶ 19} In her supplemental brief, Mother contends the foregoing findings by the trial court are distorted, telling only part of the story. Although she has been married multiple times, Mother notes that she married her current husband, R.R., in 2004. With regard to instability and chaos in the home, Mother attributes them to stress caused by the sexual abuse allegations. Mother points out that the child who committed the abuse, R.R.'s son from another relationship, has been removed from her home and lives out-of-state with a relative. Mother contends she and R.R. have resolved much of the tension that previously existed between them. She also

contends the trial court erred in essentially holding her strictly responsible for the sexual abuse that occurred in her home, for the fact that R.S. and K.S. have been diagnosed with mental issues, and for the fact that R.S. is failing in school. According to mother, she did her best to remedy the sexual abuse issue upon discovering it, she obtained medication and treatment for R.S. and K.S., and she worked with the school to address R.S.'s academic problems.

{¶ 20} Mother's own hearing testimony supports her claims. But even taking that testimony into account, the evidence, as a whole, supports the trial court's central finding that chaos and instability in the home, attributable largely to her marriage to R.R., have produced a change in circumstances since the last decree allocating parental rights. While the problems in the home may have subsided somewhat after the sexual abuse issue was resolved, the record contains ample evidence to support a finding that R.R. remains a hostile, destabilizing force in the lives of the children. Social worker Julie Sullivan summarized the situation in the home at the time of the hearing as follows:

{¶ 21} "I think they're working through a lot of their issues, [Mother and R.R.] are; they're working through their problems. [R.R.] is still very resistant, doesn't think he's got an anger problem, which all of the children have reported that he gets very angry, yells and screams, the house is kind of chaotic when [R.R.'s] upset. They are working through those. He did complete an assessment on Thursday at Family Service Agency, which he completed one months before but did not follow through with recommendations." (Hearing transcript at 28).

{¶ 22} In her testimony, Mother admitted that R.R. "does have some issues

with some anger[.]" (Id. at 91). Most notably, R.R. testified at the hearing and displayed his anger and volatility first-hand. In testimony that the trial court accurately characterized as "entirely lacking in credibility," R.R. exhibited open hostility and eventually walked off of the witness stand, resulting in the trial court having him taken into custody and held in contempt. When questioned by Father, R.R. became uncooperative and professed not to recall anything about anything. The hearing transcript reveals the patent insincerity of his testimony. (Id. at 155-162). After several minutes of questioning, R.R. announced that he was "finished" and that he would not answer another question. (Id. at 163). After the trial court ordered him to continue or go to jail, R.R. proceeded to deny everything asked. (Id. at 163-164). When Father eventually attempted to impeach R.R. with a tape-recorded telephone conversation, R.R. ignored the trial court's order to remain seated and left the courtroom. (Id. at 168-170). This contemptuous behavior by R.R. fully supports the trial court's finding that he is volatile, angry, and unpredictable and that he has caused Mother's home to be unstable.

{¶ 23} The Ohio Supreme Court has recognized that a change in circumstances must be one of substance, not slight or inconsequential, to justify modifying a prior custody order. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260. "In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change." Id. at syllabus. A new marriage, alone, ordinarily does not constitute a sufficient change in circumstances to warrant a change in custody. Id. at 419. In *Davis*, however, the

Ohio Supreme Court recognized that "a new marriage that creates hostility by the residential parent and spouse toward the nonresidential parent, frustrating attempts at visitation, may be an unforeseen change in circumstances warranting further inquiry into the best interest of the child." Id. at 419.

{¶ 24} Although R.R.'s volatility and anger may not have frustrated Father's visitation attempts, this does not mean Mother's remarriage cannot constitute a change in circumstances. We do not read *Davis* to imply that the *only way* a new marriage can qualify as a change in circumstances is if it creates visitation-related hostility. To the contrary, we believe the trial court acted within its discretion in finding a change in circumstances based on the instability that R.R.'s hostility and volatility introduced into Mother's home and the adverse impact his conduct had on R.S. and K.S. The instability and chaos the trial court attributed to R.R.'s presence in the home reasonably qualifies as an adverse change of substance in the circumstances of the children. Therefore, the trial court did not err in finding a change in circumstances since the time of the prior custody decree.[1]

{¶ 25} Contrary to Mother's argument, the trial court also adequately found that the harm likely to be cause by a change of environment was outweighed by the advantages of the change. Although Mother contends this finding remains absent from the trial court's most recent judgment entry, the trial court made the finding, albeit perhaps inferentially, on the bottom of page four of its decision. After finding that the "instability and chaos" attributable to R.R.'s presence in the home qualified

---

[1] Parenthetically, we note that the prior custody decree was entered when Mother and Father divorced. Therefore, that decree pre-dated Mother's new marriage to R.R.

as a change in circumstances, the trial court continued:

{¶ 26} "[T]he Court of Appeals for the Third Appellate District determined that a Juvenile Court did not abuse its discretion when it modified a custody order and granted custody of a 16 year old child to his father, *when the evidence showed that the advantages of the custody change out weighted the disadvantages * * * because : (1) the critical element missing from the child's life was stability, (2) the mother who was given custody, but unable to provide stability to the child, (3) the child would have a stable home with his father* who had financially support [sic] him and kept in contact with him throughout his young life, *In re Rutan*, [Union App. No. 14-03-52,] 2004-Ohio-4022 (2004)."(Emphasis added).

{¶ 27} In citing *Rutan*, the trial court plainly was drawing a parallel between that case and the case before it, insofar as both cases involved attempts to remedy instability in a child's home life by providing a more secure, stable home. By recognizing that the advantages of a custody change outweigh the disadvantages when the change will produce greater stability for a child, the trial court effectively made a finding that, as in *Rutan*, the harm likely to be caused to R.S. and K.S. by a change of environment was outweighed by the advantages of the change to them. Although the trial court could have said so more directly, the import of its analysis is evident.

{¶ 28} Finally, we reject Mother's assertion that the harm likely to be caused to R.S. and K.S. by a change of environment outweighs any benefit to them. In evaluating the harm and the advantages to R.S. and K.S. if Father obtains custody, we note that the children have lived with Mother for their entire lives. Although they

have had lengthy and regular periods of visitation with Father in Kansas, the trial court's interview with the children established that one of them was ambivalent about a custody change. The other child expressed a desire to remain with Mother. Although these wishes are not dispositive, they are relevant given the children's ages.

{¶ 29} On the other hand, the record reflects that the boys love Father and have spent extensive vacation time with them. Given the unstable home environment the boys have had with Mother and R.R., the trial court reasonably concluded that the benefits of sending them to Kansas to live with Father would outweigh any potential harm. Although resolution of this issue is perhaps close, the trial court was best positioned to make this determination based on its familiarity with the parties and the insights it had gained by watching them in court. Our function as an appellate court is to review the trial court's determination, after it is made, for an abuse of discretion. *Pellettiere v. Pellettiere*, Montgomery App. No. 23141, 2009-Ohio-5407, ¶12; *Beismann v. Beismann*, Montgomery App. No. 22323, 2008-Ohio-984, ¶20 ("The discretion which a trial court enjoys in custody matters should be afforded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. * * * Thus, a reviewing court may not reverse a custody determination unless the trial court has abused its discretion."). We see no abuse of discretion in the trial court's determination that the benefit to R.S. and K.S. from a change of environment outweighs any harm likely to

be caused by the change. Accordingly, Mother's first assignment of error is overruled.

{¶ 30} In her second assignment of error, Mother claims the trial abused its discretion by modifying the prior domestic relations court decree that had awarded her custody of R.S. and K.S. She advances five arguments in support. The first three arguments concern the requirements of R.C. 3109.04(E). Specifically, Mother contends (1) there was not a change in circumstances sufficient to warrant granting Father custody, (2) the reallocation of parental rights was not in either child's best interest, and (3) the advantages of the change did not outweigh the likely harm to the children. Mother also argues (4) that the trial court erred in finding R.S. and K.S. dependent when ruling on Father's custody motion, and (5) that it erred in failing to grant the guardian ad litem's motion for a continuance.

{¶ 31} Upon review, we reject Mother's arguments about a change in circumstances or whether the benefits of awarding Father custody outweighed the likely harm to the children. We fully addressed those issues above and need not repeat that analysis here. As for the best-interest determination, the trial court's original judgment entry found a change of custody to be in the best interest of R.S. and K.S. The record supports this determination.

{¶ 32} When determining the best interest of a child in a dependency action, a trial court may consider any relevant circumstances, including any relevant best-interest factors under R.C. 3109.04(F). *In re Fulton*, Butler App. No. CA2002-09-236, 2003-Ohio-5984, ¶11. A trial court need not recite those factors or discuss each of them in its judgment entry. It is sufficient if the trial court refers to

evidence that supports its best-interest determination. *Chelman v. Chelman*, Greene App. No. 2007 CA 79, 2008-Ohio-4634, ¶38-39.

{¶ 33} In the present case, the trial court's original judgment entry included the following factual findings upon which it based its best-interest determination:

{¶ 34} "**CHILDREN**: The children are physically healthy, but admittedly lazy. The children indicate through in-camera interviews that they have a love for both their mother and father. Both children admit some adjustment concerns in the home of the father. Both boys are capable of successfully matriculating through grade school and high school. [R.S.] is failing many courses at this time. Both children could do significantly better in the classroom. Their school performances and their mental health have been adversely affected by a chaotic and disruptive home life. The boys express a genuine desire to live with each other and to have regular contact with both parents.

{¶ 35} "**MOTHER**: The mother, [N.R.], presents as trying very hard to meet the needs of her children and step-children. Her home was full of children. The mother of the children is gainfully employed outside the home and works hard to provide for their needs. She is married to an angry, difficult man. He is often difficult to work with, and difficult to control. His behavior in the courtroom at the trial proceedings was contemptuous and his testimony was entirely unbelievable. Some of the children in mother's home were sexually abused. There is ample evidence that the children's needs were not met, and that for a significant period of time the abuse was undetected or not addressed, when it should have been. It is equally clear that the volatile behavior of the step-father, [R.R.], has caused the home to be unstable and

the children to be on pins and needles. There is frequent talk of divorce and separation between the mother and the step-father. There have been repeated accusations of physical and mental abuse by both parties. The mother relies significantly on her parents for help in raising her children. The home of the mother is not conducive to a loving, supportive, stable, and nurturing environment for the boys.

{¶ 36} "**FATHER**: The father is married and lives in Kansas City, Kansas, with his wife and their small child. While his past record of being a parent is not as good as it could be and should be, he has in recent years, done all that he could reasonably do to meet the needs of his sons. His home is stable. His employment is secure. The step-mother in the home is appropriate. The father has the physical, mental, emotional, and financial means to meet the needs of the boys.

{¶ 37} "The father expressed a genuine interest in raising his sons, and to remove them from the chaos that they have called home in Springfield, Ohio. He can meet their needs and placement with him would be in the best interest of the children. The Guardian Ad Litem recommended the boys be placed in the home of the father." (Doc. #27 at 1-2).

{¶ 38} For the most part, the foregoing findings are supported by evidence presented at the April 19, 2010 hearing on Father's motion for legal custody. The trial court failed to mention, however, that one of the children particularly liked Mother's new husband (his stepfather, R.R.), particularly disliked Father's new wife (his stepmother), and described his relationship with Father as being "not too well." This same child mentioned having many friends in Springfield and no friends in Kansas City. The other child was more ambivalent about where he lived, seemingly enjoying

both places.

{¶ 39} With regard to Mother, the record supports the trial court's finding that her new husband, R.R., is generally angry and difficult to deal with. We note, however, that her home no longer is full of children and the perpetrator of the sexual abuse no longer resides there. Moreover, talk about separation and divorce appears to have subsided with the passage of time since the improper sexual activity occurred. The trial court still reasonably could have concluded, however, that R.S. and K.S. would be better off living with Father rather than with their step-father, R.R., who made a poor impression at the hearing. At the time of the hearing, one of the two children was failing in almost all of his classes at school. The record supports a finding that there is a general lack of discipline and direction in Mother's home and that the situation may be better in Father's home. Although one of the children did not particularly want to move to Kansas City, the wishes of the children are not dispositive. One reason that child cited for not getting along well with Father involved a one-time dispute about performing a chore.

{¶ 40} On appeal, Mother points out that Kansas City is far from where R.S. and K.S. have been raised. She also stresses the presence of family and friends in Springfield. Mother further expresses concerns about Father's wife not having been around the children much, about Father's ability to support the children, about Father's strictness and his one-time use of a paddle for discipline, about Father's failure to give the children their medication, and about Father being delinquent on his child-support obligation. The trial court heard testimony about these concerns and took them into consideration.

{¶ 41} With regard to financial resources, we note that the record supports the trial court's finding that Father has relatively secure employment and the ability to provide for the children. As for Father's strictness, the evidence did not compel a finding that he is overly strict. The record indicates that Father has rules, requires the children to perform chores, and disciplines them. As "a last resort," he once disciplined the boys by striking them one time each with a paddle. We note, however, that Mother's new husband, R.R., also admitted spanking the children. In any event, "parents have the right to use reasonable physical discipline, or corporal punishment, to prevent and punish a child's misconduct." *In re J.L.*, 176 Ohio App.3d 186, 190, 2008-Ohio-1488, ¶12. Nothing before us establishes that any of the discipline imposed by anyone in this case exceeded the bounds of reasonableness.

{¶ 42} The record also supports the trial court's belief that R.R. has a temper and came across at trial as being angry and volatile. With regard to child support, the only times Father fell behind were when he was unemployed. At the time of the hearing, he was making regular payments, paying toward his arrearage, and maintaining employment. As for the medication issue, Father assured the trial court that he would give it to the children if a psychiatrist deemed it necessary. Notably, the medication at issue here was prescribed by a psychiatrist.

{¶ 43} Although the issue is perhaps a close one, we do not believe the trial court abused its discretion in finding a change of custody to be in the best interest of R.S. and K.S. In reaching this conclusion, we recognize that "the discretion which a trial court enjoys in custody matters should be afforded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the

lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Goldsboro v. Goldsboro*, Miami App. No. 2006 CA 48, 2007-Ohio-2135, ¶12.

{¶ 44} Mother next argues that the trial court erred in finding R.S. and K.S. to be dependent children in its ruling on Father's motion for legal custody. She asserts that the issue was not properly before the trial court because it previously had found the children to be dependent when it issued its protective supervision order.

{¶ 45} Upon review, we fail to see any harm or prejudice to Mother as a result of the trial court repeating its earlier finding of dependency. Mother did not contest the trial court's original finding that R.S. and K.S. were dependent, and she consented to the issuance of a protective supervision order. That determination gave the juvenile court continuing jurisdiction over the children until their eighteenth birthday. In the exercise of its continuing jurisdiction, the trial court was authorized to grant Father legal custody. The fact that the trial court repeated its earlier dependency finding in its ruling on Father's motion is of little significance.

{¶ 46} Finally, we reject Mother's argument that the trial court abused its discretion in failing to grant the guardian ad litem a continuance. This argument concerns the trial court's denial of the guardian ad litem's February 25, 2010 motion to reschedule the April 19, 2010 evidentiary hearing due to his unavailability. The trial court overruled the motion without explanation on March 3, 2010.

{¶ 47} On appeal, Mother claims the guardian ad litem's absence from the hearing deprived her of the ability to cross examine him about findings in his report

and his recommendation that R.S. and K.S. should live with Father. This argument is unpersuasive. Notably, Mother did not join in the guardian ad litem's motion for a continuance and failed to object to his absence from the hearing. She never attempted to call the guardian ad litem as a witness or to subpoena him. Mother has forfeited her ability to complain about the guardian ad litem's absence from the hearing by failing to raise the issue below. *In the Matter of Shawn W*. (Sept. 30, 1996), Lucas App. No. L-95-267 ("Appellant never objected to the lack of the guardian ad litem's presence at the hearings, thereby waiving any right to raise this issue on appeal."). Moreover, as a matter of trial strategy, Mother's counsel purposely may have avoided raising the guardian ad litem's absence as an issue below. Given that the guardian ad litem's report was unfavorable to Mother, counsel may have wished to minimize its impact in the case by not calling its author as a witness and highlighting it. Cf. *In re E.W.*, Franklin App. No. 05AP-1088, 2006-Ohio-2609, ¶17 (recognizing that counsel's failure to cross examine a guardian ad litem could have been a reasonable trial strategy). Based on the reasoning set forth above, we overrule Mother's second assignment of error.

{¶ 48} Having overruled both of Mother's assignments of error, we affirm the trial court's judgment granting Father legal custody of R.S. and K.S.

. . . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.

Copies mailed to:

Andrew Picek
James Griffin

Mark A. Deters
Hon. Joseph N. Monnin