DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Kristen M. Nigro ("Mother"), appeals from the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, which modified a shared parenting plan. We affirm.
 {¶ 2} Mother and Appellee, Donald A. Nigro ("Father"), were divorced in April 2002. As part of the divorce, the court entered a shared parenting plan for the parties' minor child, Liam, which permitted both parties to retain legal custody of Liam while he was in their possession. The plan further designated Mother as residential parent and legal custodian for school purposes only. Each parent would receive possession on alternating weekends, and Mother would retain custody three days per week, while Father would have custody on the remaining two. In addition, each parent would receive extended parenting time with the child for up to three weeks each year, one week at a time. Both parties would retain decision making authority regarding health and school issues, but Mother's decision would control should a disagreement exist.
 {¶ 3} On October 10, 2002, only six months after the original divorce decree, Mother filed a motion to modify the shared parenting plan, requesting a reduction of the "extended overnight weekend visits and the extended possession time of three weeks * * * until Liam was age six." Father then filed his own motion to modify the shared parenting plan. The court ruled upon both motions on February 4, 2004, modifying the shared parenting plan. The court designated Father the residential parent for school purposes only, and also granted final decision making authority regarding the child's education and medical treatment to Father. The court largely left intact the additional terms of the shared parenting plan, though it included an overnight with the non-possessory parent for each one week of extended parenting time, a change to which both parties consented.
 {¶ 4} Following the decision, Mother filed a motion for findings of fact and conclusions of law, pursuant to Civ.R. 52, to which the court did not respond. Mother timely appealed, raising two assignments of error for our review.
 ASSIGNMENT OF ERROR I
"The trial court erred in modifying the parties' shared parenting plan in a manner that substantially changed the allocation of parental rights and responsibilities of the parties without finding that there had been a change of circumstances in violation of [R.C. 3109.04(E)(1)(a)] and further the trial court's decision was contrary to the evidence presented."
 {¶ 5} In her first assignment of error, Mother asserts that the trial court erred by modifying the shared parenting plan without explicitly finding a change of circumstances under R.C.3109.04(E)(1)(a). Mother further alleges that the trial court's modification, designating Father residential parent for school purposes only and granting Father final decision making authority as to educational and medical issues, was against the manifest weight of the evidence. We disagree with both of Mother's contentions.
A.R.C. 3109.04(E)(1)(a)
 {¶ 6} In the first part of her assignment of error, Mother argues that R.C. 3109.04(E)(1)(a) requires a court to make an explicit finding of a change of circumstances in order to substantially modify a shared parenting plan. When reviewing whether a trial court correctly interpreted and applied a statute, an appellate court employs the de novo standard as it presents a question of law. See Akron v. Frazier (2001),142 Ohio App.3d 718, 721. Thus, an appellate court does not give deference to the trial court's determination. Id. R.C.3109.04(E)(1)(a) does require the court to find a change of circumstances when substantially modifying a shared parenting plan. However, we find it inappropriate to require the court to use the exact phrase "change of circumstances." While the better practice would be for a court to explicitly find a change of circumstances before delving into the issue of the best interests of the child, we will affirm a decision where the factual findings of the court support a finding of changed circumstances. Explicit language is preferable, but not necessary.
B. Manifest Weight
 {¶ 7} Mother also maintains that the trial court's decision was against the manifest weight of the evidence. Specifically, Mother opines that "[t]he trial court's findings that * * * `[F]ather's perceptions of the child's development are consistent with observations of the school and [Father's expert]' are clearly contrary to the evidence presented." Mother further argues that the trial court erred by finding the testimony of Father and Father's expert more credible than the testimony of Mother and Mother's expert. In essence, she contends that the trial court's finding of a change in circumstances was not supported by the evidence. We disagree.
 {¶ 8} This Court will not overturn a trial court's modification of a shared parenting plan absent an abuse of discretion. Masters v. Masters (1994), 69 Ohio St.3d 83, 85. An abuse of discretion indicates more than a mere error in judgment or law, and exists only when a trial court's decision was arbitrary, unreasonable, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. An appellate court may not substitute its judgment for that of the trial court when applying the abuse of discretion standard. Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 9} The original shared parenting plan entered by the court was the result of adverse proceedings. Mother and Father could not agree on allocation of parental rights and responsibilities or the amount of time each would retain custody of Liam. At that time, the Court found that:
"Both [Mother and Father's] experts agreed that both [Mother] and [Father] were competent caregivers for the minor child. Expert testimony and testimony of the parties was consistent in that the minor child is well adjusted and developmentally on track. * * * Evidence was presented that the parties have difficulty communicating with each other regarding their relationship with each other and their different approaches to parenting the minor child, however, those different parenting approaches have not resulted in any harm to the minor child[.] * * * Expert testimony indicates that both should make the decisions effecting [the child] with regard to school, medical treatment, activities and any other major decisions that ultimately effect the minor child's health and well-being. Credible expert testimony exists that if the parties cannot agree then Mother is capable of making these decisions, has done so in the past, and should do so in the future."
Due to concerns about the parents' lack of good communication skills with each other, the court's order also required they both "participate in regular, usual communication with the other on any [and] all matters of importance or concern regarding the child's welfare."
 {¶ 10} Twenty-two months later, following a hearing regarding both parents' motions for modification of the shared parenting plan, the trial court discussed changes as to the original findings. The court noted that Mother had represented to Liam's medical doctor and Mother's expert that Liam now suffered from developmental difficulties and sleep problems. She told them that he suffered from "night terrors," could not properly use utensils, and did not perform at the same level as other children his age at his school. Father, on the other hand, indicated that Liam did have age appropriate skills, both socially and with utensils, and that the child slept soundly while staying at Father's house. Father's expert observed Liam with Father, requested Liam to do simple tasks, including using utensils, and found that he had no developmental difficulties.
 {¶ 11} Two letters from Liam's school were also entered into evidence. The first, a letter explicitly requested by Mother, indicated developmental difficulties. The second, produced only a month and a half later in response to Father's concerns after receipt of the original letter, stated that "[b]ased on a conference with the staff in Liam's classroom, it is our collective opinion that his behavior is consistent with other children his age."
 {¶ 12} After reviewing the evidence, the trial court found that Mother "failed to present any evidence consistent with her representations of Liam's behavior." It further noted that "[M]other's perceptions of the development of the child create an environment that is potentially harmful to the child, should she continue to be designated with the final authority to authorize medical treatment and educational training." In addition, the court indicated that Mother's acts interfered with Father's companionship with Liam, and that any continuance of those actions might "potentially deprive [F]ather of a balanced relationship with Liam[.]"
 {¶ 13} These findings of the court provide competent and credible evidence supporting a change of circumstances. Liam showed no signs of developmental difficulties at the time of the original shared parenting plan, yet twenty-two months later a question existed as to his developmental well-being, though such problems only exhibited themselves while Liam was in Mother's care. Furthermore, the evidence showed that Mother and Father were not communicating as required by the original plan — for example, Father insisted that Mother failed to tell him that she was taking Liam for assessment by a medical professional regarding sleep and developmental issues. In addition, Mother was interfering with the relationship between Father and Liam such that the court feared a balanced relationship with both parents was threatened. At the time of the original shared parenting plan the court made no mention of such issues and likely assumed such interference would not occur. These observations and findings of the trial court support a finding of a change in circumstances since the entry of the original shared parenting plan. Accordingly, we find that the trial court did not abuse its discretion and overrule Mother's first assignment of error.
 ASSIGNMENT OF ERROR II
"The trial court erred when it failed to provide findings of fact and conclusions of law in response to [Mother's] timely motion for findings of fact and conclusions of law pursuant to [Civ.R.] 52."
 {¶ 14} In her final assignment of error, Mother argues that the trial court erred by failing to issue findings of fact and conclusions of law following her request pursuant to Civ.R. 52. While the court did not issue findings of fact and conclusions of law following Mother's Civ.R. 52 motion, the court did issue those findings prior to her motion in its original decision. No error regarding an omission by the court will be grounds for disturbing a court's judgment unless that failure is inconsistent with substantial justice. Civ.R. 61. Any error by the court in failing to issue findings of fact and conclusions of law following Mother's motion is rendered harmless by the fact that the court had already issued those findings. We see no need for the trial court to issue the exact same decision in response to a motion for Civ.R. 52 findings where those findings have previously been made. We overrule Mother's second assignment of error.
 {¶ 15} We overrule Mother's assignments of error and affirm the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Batchelder, J., Boyle, J., Concur.