PURVIS; Heaton et al., Appellees,

v.

HAZELBAKER, Appellant.

[Cite as *Purvis v. Hazelbaker*, 181 Ohio App.3d 167, 2009-Ohio-765.]

Court of Appeals of Ohio,
Fourth District, Adams County.

No. 08CA870.

Decided Feb. 19, 2009.

168

Kris D. Blanton, for appellees, Debra and Keith Heaton.

Southeastern Ohio Legal Services and Lauren R. Weller, for appellant.

HARSHA, Judge.

{¶ 1} Contending that the court applied the wrong legal standard, Robin Hazelbaker appeals the juvenile court's decision awarding custody of her biological daughter, B.M.P., to B.M.P.'s paternal grandparents, Debra and Keith Heaton. Hazelbaker argues that in making its award to the Heatons, the trial court improperly construed an agreed entry concerning visitation as a previous shared parenting plan and then erroneously applied the best-interest-of-the-child standard, rather than the *Perales* unsuitability standard. See *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047. The Heatons contend that the court applied the correct legal standard because the agreed entry constituted a prior custody award, and thus the change-of-circumstances/best-interest standard was appropriate. Alternatively, they contend that the record nonetheless supports a finding that Hazelbaker's continued custody of B.M.P. would be detrimental to the child.

{¶ 2} Because Hazelbaker never lost custody of the child, either by agreement or under a court order, she retained her paramount right to custody, and the trial court had to find her "unsuitable" before awarding custody to a nonparent, i.e., the Heatons. Because the best-interest test is the wrong legal standard, we must reverse the judgment and remand this matter for a suitability determination.

## I. The Procedural History and the Facts

{¶ 3} B.M.P. was born in November 2000 and is the natural daughter of Hazelbaker and Michael Purvis. The couple lived together for some period of time, but were never married and eventually separated in April 2005. Purvis filed a complaint in April 2006 to establish child support and a parent-child relationship and attached a proposed shared-parenting plan. Shortly thereafter, however, he was incarcerated and failed to pursue his petition. Nonetheless, the trial court did not deny or dismiss this complaint. In May 2006, the Heatons,

Purvis's mother and stepfather, filed a motion to intervene, which was later granted, and a motion for grandparental visitation rights, requesting "reasonable companionship and/or visitation rights." Hazelbaker, acting pro se, and the Heatons, who were represented by counsel, later reached an agreement on the "motion for grandparents rights." The agreed entry, dated July 27, 2006, stated: "The Defendant and grandparents have agreed to share in the parenting of the child. Defendant, Robin Hazelbaker shall retain custody of the minor child. Keith and Debbie Heaton shall have visitation with the minor child every weekend or as agreed upon by the parties."

{¶ 4} In November 2006, the Heatons filed a motion seeking to change custody to them, arguing that Hazelbaker was "unfit" to care for the child. Several other filings occurred, but for our purposes, the next significant event occurred when Purvis filed a motion to modify/change custody, arguing that there had been a change of circumstances and that it was in the best interest of the child to name him the custodial and residential parent. He also filed a motion for visitation, which the court granted under the provisions of its local rule.

{¶ 5} The matter ultimately came on for a hearing on several pending motions, including the Heatons' November 2006 motion for custody. After two days of testimony, the court issued a judgment entry that designated the grandmother, Debra Heaton, as the custodian of the child. In its entry, the court stated:

This matter had originally come before the Court on motions going back to the end of 2006 and the beginning of 2007. The grandmother had moved for custody in November 2006 subsequent to an entry from July 2006 establishing the grandparents as persons who would "share in the parenting of the child."
\* \* \*

The Ohio Revised Code specifies that for custody to be changed from a previous order two requirements must be fulfilled: first, the moving party must establish that there has been a change in circumstances of the custodian and secondly the moving party must establish that the change is in the best interest of the child.
\* \* \*

In this case, there was considerable testimony that after the last shared parenting order in which shared parenting was awarded to mother and grandmother, there has been considerable acrimony between the parties and that on many occasions when events displeased the mother, she withheld the child from contact with the grandmother.
\* \* \*

The Court finds that the mother's constant refusal to permit this child to have not only beneficial, but indeed Court-ordered, contact with the father and

the grandmother is an adequate change of circumstances along with the newly discovered information about her nude photographs for the Court to modify the pervious [sic] shared parenting plan and that it is in the best interest of the child be [sic] placed with the grandmother as the residential parent.

\* \* \*

The Court therefore finds that adequate circumstances have been shown to have been changed and that the best interest of the child [B.M.P.] is best served by designating the grandmother Debra Purvis Heaton as the custodian with the mother Robin Hazelbaker to have standard parenting time with the child pursuant to the local rule with the modification that the child will spend one half of the summer vacation from school with the mother and half with the grandmother.

{¶ 6} Hazelbaker now appeals the trial court's judgment, raising three assignments of error.

## II. Assignments of Error

{¶ 7} Hazelbaker presents the following assignments of error:

I.  In granting custody of the minor child to the paternal grandmother, the trial court erred when it failed to conduct a *Perales* unsuitability analysis and make an express finding of unsuitability on the record as required under Ohio law.

II.  Even if this Court finds that the trial court did not have to expressly find the parent unsuitable, the record would not support a finding that appellant is an unsuitable parent.

III.  The trial court's application of change of circumstances and best interest test was an erroneous misapplication of R.C. 3109.04(E).

## III. The Applicable Law and Our Standard of Review

{¶ 8} In her first assignment of error, Hazelbaker contends that in granting legal custody of the child to the Heatons, the trial court erred when it failed to conduct a *Perales* suitability analysis and make an express finding of unsuitability on the record. See *Perales,* 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047. She contends that the trial court applied the wrong legal standard when it awarded custody based on the best-interest-of-the-child standard. The Heatons acknowledge that Hazelbaker did not lose custody of B.M.P. under their prior agreement. But nonetheless, they contend that because it was a prior custody order, the court could use the change-of-circumstances/best-interest test. We reject that contention and agree with Hazelbaker.

{¶ 9} A trial court has broad discretion in determining custody matters. *Reynolds v. Goll* (1996), 75 Ohio St.3d 121, 124, 661 N.E.2d 1008. Consequently, we can sustain a challenge to a trial court's custody decision only upon a finding that the trial court abused its discretion. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159. When applying an abuse-of-discretion standard, we are not free to merely substitute our judgment for that of the trial court. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181. A deferential review in a child-custody case is appropriate because much may be evident in the parties' demeanor and attitude that does not translate to the record well. *Davis* at 419, 674 N.E.2d 1159. However, a trial court has no discretion to apply an improper legal standard in a custody dispute between a parent and a nonparent. We review such "process flaws" without deference to the trial court. See *State v. Nayar*, Lawrence App. No. 07CA6, 2007-Ohio-6092, 2007 WL 3407169, ¶ 32.

{¶ 10} In a child-custody proceeding between a parent and a nonparent, a court may not award custody to the nonparent without first determining that the parent is unsuitable to raise the child, i.e., without determining by a preponderance of the evidence that the parent abandoned the child, contractually relinquished custody of the child, or has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child. *In re Perales*, 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047, at syllabus. The general rule in Ohio regarding original custody awards in disputes between a parent and a nonparent is that "parents who are 'suitable' persons have a 'paramount' right to the custody of their minor children unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children." *Masitto v. Masitto* (1986), 22 Ohio St.3d 63, 65, 22 OBR 81, 488 N.E.2d 857, quoting *Perales* at 97, 6 O.O.3d 293, 369 N.E.2d 1047. In *Bragg v. Hatfield*, 152 Ohio App.3d 174, 2003-Ohio-1441, 787 N.E.2d 44, ¶ 21, we noted that once custody has been awarded to a nonparent, the court will not apply the *Perales* unfitness standard to a later request for custody modification. Instead, custody modification in that situation is determined under the R.C. 3109.04 change-of-circumstances/best-interest standard. *Id.*; see also *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 21, citing *Masitto* at 65, 22 OBR 81, 488 N.E.2d 857. In other words, if a parent has custody of her minor child, a custody dispute with a nonparent is determined under the *Perales* standard; but if a custody award has previously been made to a nonparent, the party seeking to modify that award must show a change-in-circumstances/best-interest issue even if the noncustodial party is a parent and the custodial party is a nonparent. *Bragg* at ¶ 21. Thus, once a nonparent has acquired custody, the court need not apply the *Perales* unfitness standard to a later request for custody modification. *In re Kovaleski*, Washington App. No. 05CA12, 2006-Ohio-317, 2006 WL 199549, ¶ 21, citing

*Bragg.* Instead, custody modification in that situation is determined under R.C. 3109.04. Id.

{¶ 11} The trial court found that the July 27, 2006 agreed entry established the Heatons "as persons who would 'share in the parenting of the child.'" Construing the agreed entry as a shared-parenting agreement between Hazelbaker and Ms. Heaton, the court went on to find that a modification of the previous "shared parenting plan" was warranted due to a change of circumstances and that it was in the best interest of the child to be placed with Ms. Heaton as the residential parent.

{¶ 12} Clearly, the agreed entry stated that Hazelbaker and the Heatons "have agreed to share in the parenting of the child." However, Hazelbaker, the natural mother, and the Heatons, as nonparents, could not enter into a shared-parenting agreement under R.C. 3109.04 as a matter of law. See, e.g., *In re Bonfield,* 96 Ohio St.3d 218, 2002-Ohio-4182, 773 N.E.2d 507. R.C. 3109.04(A)(2) provides that a court may, upon determining that a proposed shared-parenting plan is in the best interest of the children, allocate parental rights and responsibilities for the care of children to both "parents." Id. at ¶ 16. In *In re Bonfield,* the Supreme Court of Ohio noted that R.C. 3109.04 specifically uses the term "parent," and this term is defined in R.C. 3111.01 to mean a "narrow class of person who are statutorily defined as parents for purposes of entering a shared parenting agreement." Id. at ¶ 34.[1] The court held that while the juvenile court could make a shared-custody order between a parent and a nonparent, it did not constitute shared parenting. Thus, to the extent that the trial court found that the July 27, 2006 agreed entry constituted a previous shared-parenting plan between Hazelbaker and the Heatons, the court erred. *Konicek v. Konicek* (2001), 144 Ohio App.3d 105, 759 N.E.2d 801. See also *Lorence v. Goeller* (July 19, 2000), Lorain App. No. 98CA007193, 2000 WL 988760 (a shared-parenting decree that incorporates a plan between a parent and a nonparent is void ab initio).

{¶ 13} While the agreed entry cannot be a shared-parenting plan, it might represent a contractual relinquishment of Hazelbaker's paramount right to custody. Thus, we look to determine its impact. When examining a written instrument, the cardinal purpose is to ascertain and give effect to the intent of the parties. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519. "The intent of

---

1. Specifically, the court noted that "[a] plain reading of R.C. 3111.01 indicates that there are three ways a 'parent and child relationship' can be established: by natural parenthood, by adoption, or by other legal means in the Revised Code that confer or impose rights, privileges, and duties upon certain individuals." Id. at ¶ 28.

the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Id., citing *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus.

{¶ 14} After the Heatons filed a motion for grandparental visitation under R.C. 3109.051, which governs the modification of visitation rights, the parties reached an agreement concerning the "motion for grandparents rights." While the agreed entry indicated that the parties agreed to share in the "parenting" of the child, the express terms of the entry also stated that Hazelbaker "shall retain custody of the child" and the Heatons were awarded "visitation." Moreover, in the trial court, the Heatons did not argue that Hazelbaker had contractually relinquished her rights under the terms of the agreed entry. Rather, they contested the matter solely on the issue of suitability. And the Heatons specifically concede in their brief that "the evidence does not support nor was there a suggestion that Appellant contractually relinquished custody of the child." We agree with that conclusion. Thus, the unsuitability standard applied.

{¶ 15} Finally, the Heatons contend that the record nonetheless supports an unsuitability finding because Hazelbaker's continued custody of the child would be detrimental to the child. However, the Supreme Court of Ohio has stressed the overriding importance of a trial court making a parental-unsuitability determination on the record before awarding custody away from a natural parent to a nonparent. See *Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 22. Therefore, we sustain Hazelbaker's first assignment of error.

{¶ 16} Based on our resolution of her first assignment of error, we find that her second and third assignments of error are moot. Thus, we reverse the judgment of the trial court and remand the case to the trial court for further proceedings consistent with this decision.

Judgment reversed
and cause remanded.

ABELE and McFARLAND, JJ., concur.