[Cite as *Saylor v. Lewis*, 2020-Ohio-3647.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| DERON B. SAYLOR, | : | APPEAL NO. C-190463 |
|  |  | TRIAL NO.   DR-1502089 |
| Plaintiff-Appellant, | : |  |
| vs. | : |  |
|  |  | *O P I N I O N.* |
| HOLLY   SAYLOR,   n.k.a.   HOLLY | : |  |
| LEWIS, |  |  |
| Defendant-Appellee. | : |  |

Appeal From:  Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  July 8, 2020

*Deron B. Saylor,* pro se,

*Blake P. Somers, L.L.C.*, and *Blake P. Somers,* for Defendant-Appellee.

**CROUSE, Judge.**

{¶1}    The case before us concerns post-decree proceedings in a divorce case. The parties filed several motions with the trial court concerning issues regarding contempt and parental rights and responsibilities, including custody, residency, and parenting time. The parties resolved the motions through an agreed entry. Plaintiff-appellant Deron Saylor then filed additional motions seeking to modify parental rights and responsibilities. The trial court limited its consideration of his motions to events that occurred after the parties signed the agreed entry. The court then denied Saylor's motions and ruled in favor of defendant-appellee Holly Lewis.

{¶2}    Saylor has appealed, arguing in two assignments of error that the trial court erred: (1) in finding that the agreed entry resolved all issues pending before the court, and that the agreed entry was the point from which he was required to demonstrate a change of circumstances; and (2) by failing to properly weigh the evidence as required by Ohio law and local rule. We overrule Saylor's assignments of error and affirm the judgment of the trial court.

### *Factual Background*

{¶3}    Holly Lewis and Deron Saylor were divorced in May 2016. They have three children, twin boys N.S. and G.S. (born July 2003) and daughter A.S. (born April 2006).

{¶4}    The boys' use of the internet and social media for pornographic and sexual purposes has been an issue throughout the case. For that reason, the boys were assigned a guardian ad litem ("GAL") who recommended that the boys' access to the internet and social media be restricted. The divorce decree included a shared-

parenting agreement, which put restrictions on the children's usage of social media and electronic devices. Saylor filed a motion for contempt when he suspected that Lewis was allowing the boys to use social media and the internet for inappropriate purposes. The parties entered an agreed entry on January 17, 2017, wherein Lewis agreed to remove the children from all social media.

{¶5} On August 1, 2017, Saylor filed a motion for a change in parental rights and responsibilities (custody). He alleged that Lewis had enabled the boys to continue to use social media for sexual and pornographic purposes. On October 18, 2017, Saylor filed a motion for contempt alleging harassment by Lewis. Lewis had filed a motion to terminate shared parenting on May 3, 2017, and a motion to amend/clarify on March 1, 2018. The parties convened for trial on March 13, 2018, to resolve the four pending motions. A partial trial was conducted, but was continued in progress until the next day, at which time the parties came to an agreed entry resolving all pending motions before the court. The court accepted the agreed entry and concluded the trial.

{¶6} On December 21, 2018, Saylor filed two motions—a motion for "contempt of parenting time, reimbursement of attorney fees, harassment," and a motion for a change of parental rights and responsibilities (custody). Saylor's appeal is based upon his motion for change of parental rights and responsibilities, in which he argued that circumstances had changed since he "agreed with Mrs. Lewis to work together to resolve all issues" on March 14, 2018. He claimed that Lewis had failed to work with him and that she continued to allow the boys to access pornography and engage inappropriately with strangers over social media. For those reasons, he asked the court to grant him sole custody.

3

{¶7} On February 14, 2019, and June 14, 2019, the court held hearings on Saylor's motions. Lewis argued that the issues raised by Saylor in his December 21, 2018 motions had already been decided by the agreed entry on March 14, 2018. Saylor argued that he was never given the chance to present evidence of Lewis's failure to "stop" the boys' behavior involving pornography and inappropriate social media use, and so that issue remained unresolved. Also, he contended that the agreed entry was temporary as to the allocation of parental rights and responsibilities because it stated that "mother shall be designated the temporary residential and custodial parent."

{¶8} The court held that the March 14, 2018 agreed entry resolved all of the issues that were pending at the time, and that it was permanent, despite the inclusion of the word "temporary" in its allocation of custody and residency. The court held that it would not hear evidence from before March 14, 2018, in its consideration of Saylor's December 21, 2018 motions. On July 18, 2019, the court denied Saylor's motions.

*First Assignment of Error*

{¶9} The thrust of Saylor's first assignment of error is that he was denied the ability to present his case. He argues that the trial court erred where it found that the March 14, 2018 agreed entry resolved all issues pending before the court, and that he must demonstrate a change of circumstances after March 14, 2018, in order to achieve a modification to custody.

{¶10} Generally, custody decisions are reviewed for an abuse of discretion. "Custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the

4

evidence before him * * * and such a decision must not be reversed absent an abuse of discretion." *Kane v. Hardin*, 1st Dist. Hamilton No. C-180525, 2019-Ohio-4362, ¶ 6, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶11} However, where the question is whether the trial court correctly decided a question of law, such as its interpretation of the agreed entry, we review de novo. *See Shah v. Smith*, 181 Ohio App.3d 264, 2009-Ohio-743, 908 N.E.2d 983, ¶ 7 (1st Dist.); *State v. Ushery*, 1st Dist. Hamilton No. C-120515, 2013-Ohio-2509, ¶ 6; *Mangan v. Mangan*, 2d Dist. Greene No. 07–CA–100, 2008-Ohio-3622, ¶ 6. Thus, we review the trial court's decision to limit Saylor's ability to present his evidence de novo.

{¶12} R.C. 3109.04(E)(1) governs motions to modify a parenting decree, including decrees regarding custody and residency. Modifying a parenting decree is not permitted unless: (1) there has been a change in circumstances since the prior decree, based on facts that have arisen since the prior decree or were unknown by the court at the time of the prior decree; (2) the modification is necessary to serve the best interest of the children; and (3) one of the conditions in R.C. 3109.04(E)(1)(a)(i)-(iii) is satisfied. R.C. 3109.04(E)(1)(a).

{¶13} The trial court determined that Saylor had failed to demonstrate a change in circumstances since March 14, 2018, and denied his motion. Saylor argues that the agreed entry was not intended to be a "prior decree," from which he must demonstrate a change in circumstances because, (1) the parties did not resolve any issues in the agreed entry, rather they merely committed to working together to resolve the issues, and (2) the provisions in the agreed entry were temporary.

5

**{¶14}** First, we discuss whether the agreed entry resolved the issues that were pending before the court. In *Purvis v. Hazelbaker*, 181 Ohio App.3d 167, 2009-Ohio-765, 908 N.E.2d 489, ¶ 13 (4th Dist.), the Fourth District interpreted an agreed entry as it pertained to custody. "When examining a written instrument, the cardinal purpose is to ascertain and give effect to the intent of the parties." *Id.*, citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.,* 78 Ohio St.3d 353, 361, 678 N.E.2d 519, (1997). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Purvis* at ¶ 13, quoting *Foster* at 361.

**{¶15}** In this case, the agreed entry listed the four motions pending at that time, and stated that the parties "wish to resolve all pending motions under the following terms." Regarding custody and residency specifically, the agreed entry stated, "The Shared Parenting Plan and Decree between the parties shall be terminated, and Mother shall be designated the temporary residential and custodial parent of [the children] until further order of the court or the agreement of the parties."

**{¶16}** The language employed by the parties demonstrates that the agreed entry was intended to resolve all matters before the court, including the cell phone, social media, and inappropriate-sexual-behavior issues raised by Saylor in his motion to change parental rights and responsibilities. The agreed entry was more than just an expression by the parties to work together to resolve the issues of custody and residency, it actually resolved those issues.

**{¶17}** Next, we address Saylor's argument that the agreed entry was meant to be temporary. Lewis argues that her designation as the "temporary" custodial and

6

residential parent does not affect the permanence of the agreed entry itself. This was the same rationale followed by the trial court.

{¶18} Temporary orders allocating parental rights and responsibilities are common predivorce decree. They are governed by their own code section. *See* R.C. 3109.043 (giving the trial court the authority to make temporary orders regarding the allocation of parental rights and responsibilities when requested in the complaint, answer, or counterclaim, or by motion served with the pleading). Also, the Ohio Rules of Civil Procedure contemplate these types of pretrial orders, and designate them as interlocutory. *See State ex rel. Thompson v. Spon,* 83 Ohio St.3d 551, 554-555, 700 N.E.2d 1281 (1998); Civ.R. 75(N) (formerly 75(M)).

{¶19} We found few cases involving a temporary allocation of parental rights and responsibilities post-divorce decree. In the cases that addressed the issue, it was clear that the court intended the order to be temporary. *See Pierson v. Gorrell*, 12th Dist. Butler No. CA2011–11–216, 2012-Ohio-3878, ¶ 3 (mother was moving out of state and a determination of custody was required immediately; the court scheduled the matter for a future hearing where it determined that a change in circumstances had occurred warranting a change in custody under R.C. 3109.04); *Williams v. Williams,* 11th Dist. Trumbull No. 2002-T-0101, 2004-Ohio-3992, ¶ 16 (in holding that the trial court's grant of temporary custody was not final and appealable, the Eleventh District relied upon the interim nature of the order—"Where the permanency of a child's relocation is premised upon a future review hearing [because mother was moving out of state], it stands to reason that said order is temporary").

{¶20} The agreed entry in this case was not clearly temporary like the orders in *Pierson* and *Williams.* We are not faced with the issue of a parent moving out of

the jurisdiction, and so the permanency of the children's residency was not premised upon a future review hearing. Furthermore, in *Williams* and *Pierson,* the temporary custody orders did not actually resolve the fathers' pending motions for custody. In both cases, the custody awards were interim in nature, and the court held hearings a few months later to resolve the custody motions. The agreed entry in this case explicitly sought to resolve all pending motions, including Saylor's custody motion, and it unequivocally terminated the shared-parenting plan. Also, the court did not schedule a future review hearing.

{¶21} As the court explained to Saylor during the June 14, 2019 hearing, the allocation of custody and residency was described as temporary because the agreed entry laid out a reunification plan for Saylor, and once Saylor completed the plan, he could petition the court to amend the agreed entry. Saylor had a chance to present evidence of Lewis's failure to monitor the boys' social media and internet usage. Instead, he signed an agreed entry resolving the issues. Saylor's first assignment of error is overruled.

### Second Assignment of Error

{¶22} In his second assignment of error, Saylor argues that the trial court abused its discretion by failing to properly weigh all of the evidence. Many of Saylor's arguments under his second assignment of error relate back to the trial court's determination that it would not consider evidence from before March 14, 2018.

{¶23} First, Saylor argues that by limiting its review to evidence of events after March 14, 2018, the court violated R.C. 3109.04(F)(1)(h), which required the court to determine whether Lewis had acted in a manner resulting in the children

being abused or neglected. As discussed above, the trial court did not err in limiting Saylor to presenting only evidence of events that occurred after March 14, 2018. Without evidence of any abusive or neglectful conduct on the part of Lewis, the trial court did not violate R.C. 3109.04(F)(1)(h).

{¶24} Next, Saylor argues that, pursuant to Evid.R. 405(B), he should have been permitted to provide "specific incidents of conduct" regarding Lewis's behavior. Evid.R. 405(B) states that "in cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct." There are no charges, claims, or defenses in this case in which character or a trait of character is an essential element of proof. Saylor's Evid.R. 405(B) argument is meritless.

{¶25} Next, Saylor argues that the trial court failed to properly consider Lewis's actions *after* signing the agreed entry on March 14, 2018. He contends that her actions demonstrated her unwillingness to cooperate and make decisions jointly, and to encourage love and affection between him and the children as required by R.C. 3109.04(F)(2)(b). He argues that he should have been permitted to introduce evidence of Lewis's attempts to undermine his relationship with them. Saylor argues that after signing the agreed entry, Lewis continued to allow the boys to access social media, that she ignored his emails and refused to cooperate with him, and that she withheld A.S. from visiting him for four months.

{¶26} The trial court agreed that Lewis had withheld A.S. from visiting Saylor, but held that Lewis had good reason for doing so. On Easter weekend 2018, there was an incident between Saylor and A.S. in which he told A.S. to "go home," instead of spending the weekend with him. A.S. returned to Lewis's home and

committed self harm immediately thereafter. The court described Saylor's relationship with A.S. as a "key trigger" of her self-harming behavior. Saylor also refused to communicate with Lewis regarding the incident. Thus, the court held that Lewis's decision to keep A.S. away from Saylor was justified.

{¶27} The trial court considered the parties' lack of cooperation, and found that it was Saylor, not Lewis, who had failed to cooperate and "who has no interest in accepting responsibility for his role in his children's behavior or in working with [Lewis] to raise their children." The court explained that it was "gravely troubled by [Saylor's] lack of self-reflection, and the evidence as well as his demeanor at trial lead the Court to conclude that [Saylor], not [Lewis] is uncooperative and disruptive to his children's healthy development." In support, the court cited to Saylor's refusal to read the GAL reports, to read Lewis's messages, and to cooperate with A.S.'s counselor, and his attempts to undermine A.S.'s relationship with Lewis, as evidenced by the card he sent A.S. after the Easter weekend incident in which he wrote, "It is so sad that your mom's bitterness and hate is [sic] used to keep you from seeing your father." The trial court did not abuse its discretion in finding that it was Saylor, and not Lewis, who was being uncooperative and undermining.

{¶28} Finally, as part of his second assignment of error, Saylor argues that the trial court violated Hamilton County Court of Common Pleas Domestic Relations Division Local Rule 1.13(B) ("Loc.R. 1.13(B)") where it accepted the agreed entry even though Saylor was not represented by counsel. However, in this assignment of error, Saylor challenges the trial court's weighing of the evidence, and his Loc.R. 1.13(B) argument does not pertain to the trial court's weighing of the evidence.

{¶29} This court is limited to determining the merits of any appeal "on the assignments of error set forth in the briefs * * * to receive consideration on appeal, trial court errors must be raised by assignment of error and must be argued and supported by legal authority and citation to the record." (Citation omitted.) *State v. Harris*, 2017-Ohio-5594, 92 N.E.3d 1283, ¶ 43 (1st Dist.). "Appellate courts review assignments of error—we sustain or overrule only assignments of error and not mere arguments." *State v. Harlow*, 4th Dist. Washington No. 13CA29, 2014-Ohio-864, ¶ 10. Without an assignment of error regarding Loc.R. 1.13(B), Saylor has not properly invoked our power of review by "identifying and framing with particularity the issues" he seeks to have reviewed. *See Newell v. Shumate*, 9th Dist. Lorain No. 10CA009837, 2011-Ohio-2448, ¶ 5. Therefore, we do not reach the merits of Saylor's Loc.R. 1.13(B) argument.

{¶30} Saylor's second assignment of error is overruled.

### Conclusion

{¶31} Saylor's assignments of error are overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.