[Cite as *In re E.H.*, 2023-Ohio-470.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: E.H. | : | APPEAL NO. C-220079<br>TRIAL NO. F10-00246Z |
| | : | |
| | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: February 17, 2023

*Lyons & Lyons Co., LPA*, and *Kathleen W. Adams*, for Appellant Mother,

*Moskowitz & Moskowitz, LLC*, and *James H. Moskowitz*, for Appellee Father.

**BERGERON, Judge.**

{¶1} Following years of acrimonious litigation, the trial court modified an existing custody agreement to transfer legal custody of 13-year-old E.H. from appellant Mother to appellee Father. In this appeal, Mother contests the change in custody on three grounds: first, that the trial court applied the incorrect legal standard for modifying a custody agreement; second, that the trial court erred when it denied her motion to strike the guardian ad litem's testimony and report; and third, that the trial court erred when it found that Mother denied Father's parenting time. However, based on our review of guiding precedent and the record at hand, we overrule all of Mother's assignments of error and affirm the judgment of the trial court.

I.

{¶2} Mother and Father are the unmarried parents of E.H. Pursuant to an Agreed Entry Allocating Parental Rights and Responsibilities ("Agreed Entry") entered into in June 2010, Mother was designated the residential parent and legal custodian of E.H., whereas Father received regular, holiday, and extended parenting time with his daughter. Due to Father's at-times complicated work schedule, the Agreed Entry provided: "If Father's work schedule changes, the parties agree that Father shall still get parenting time for three hours every Wednesday, but will accommodate his work schedule. This is true for all parenting periods listed in this agreement."

{¶3} Between 2013 and 2017, the parties were embroiled in litigation regarding custody and parenting time of E.H., with both Mother and Father raising allegations of contempt. In November 2017, the parties resolved their disputes by agreement and withdrew all pending motions.

{¶4}   Although the litigation briefly quieted down, over the past several years, following the last custody order, Father began noticing changes in E.H. that raised concerns.  Father observed signs of anxiety in E.H., including an emotional breakdown in February 2020 during which E.H. disclosed information about her life and about Mother that Father found disturbing.

{¶5}   This breakdown prompted Father to file another petition for custody of E.H. in May 2020, which precipitated a deal of sparring between the parents.  While this custody motion was pending, in August 2020, Father filed a motion for contempt. In January 2021, Mother responded with her own motion for contempt as well as a motion to modify Father's parenting time.  In July 2021, Father requested that the court appoint a guardian ad litem ("GAL") to represent E.H.'s interests in the litigation, which the court granted.  Then, in March 2021, Mother filed a motion to remove the GAL.

{¶6}   Much of this appeal revolves around the GAL and her role in this litigation.  The GAL met Mother at her home and interviewed her on the porch for over an hour, but elected not to enter Mother's home because Mother seemed sensitive about that prospect.  An Ohio Department of Job and Family Services ("JFS") caseworker was conducting a home safety investigation at the same time, so the GAL decided to defer to the JFS caseworker's findings and remain outside.  Among other findings, the GAL made the following, many of which comport with prior JFS conclusions: (1) Mother was not truthful about E.H.'s medical care; (2) E.H. had not seen her primary care physician or dentist for two years; (3) E.H. was afraid to speak candidly on Mother's front porch because of cameras recording the vicinity; (4) E.H. expressed concern that Mother would discover what she told the GAL and the JFS

caseworker; (5) E.H. told Mother and the GAL that she wants to spend more time at Father's house; (6) E.H. informed the police and the GAL that she wants to live with Father and is comfortable switching schools; (7) E.H. informed the police when they visited Mother's house that she is scared but would not say why; and (8) the GAL is concerned about E.H.'s isolation and lack of age-appropriate privacy at Mother's house. After completing her investigation, the GAL recommended that custody of E.H. be transferred from Mother to Father.

{¶7} All pending motions were heard by a magistrate over the course of four days during the first half of 2021. Following those hearings, in July, the magistrate issued findings of fact, drew conclusions of law, and rendered decisions on all pending motions. The magistrate granted Father's petition for custody and motion for contempt, granted Mother's motion for contempt, denied Mother's motion to modify Father's parenting time, and also denied Mother's motion to remove the GAL.

{¶8} Mother and Father each proceeded to file objections to the magistrate's decision in August 2021. The trial court heard oral arguments on the objections in November 2021 and issued a judicial entry overruling all objections in January 2022. Mother timely appealed.

II.

{¶9} In her first assignment of error, Mother asserts that the trial court applied the incorrect legal standard when it modified the 2010 custody agreement to transfer custody of E.H. from Mother to Father. Specifically, Mother takes issue with the fact that the trial court applied the legal standard in R.C. 3109.04(B)(1) for initial custody determinations, rather than the standard in R.C. 3109.04(E)(1) for modification of parenting decrees, when it modified the existing custody decree.

4

**{¶10}** R.C. 3109.04(E)(1) governs motions to modify a parenting decree, including decrees regarding custody. A modification of parental rights can only occur upon a change in circumstances since the last decree, a determination that the modification is necessary to serve the child's best interest, and a determination that one of the three conditions listed in R.C. 3109.04(E)(1)(a)(i), (ii), and (iii) is satisfied. *Saylor v. Saylor*, 1st Dist. Hamilton No. C-190463, 2020-Ohio-3647, ¶ 12. The third factor involves a consideration of whether "[t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a)(iii).

**{¶11}** Typically, an appellate court reviews a trial court's custody determination under an abuse of discretion standard, *In re T.J.*, 10th Dist. Franklin No. 10AP-201, 2010-Ohio-4191, ¶ 14, but where the trial court misstates the law or applies the law incorrectly, giving rise to a purely legal question, we engage in de novo review. *Saylor* at ¶ 11. However, as Mother acknowledges in her brief, she failed to raise this issue at the trial level, which limits our review to a plain error analysis. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122, 679 N.E.2d 1099 (1997). "[I]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself." *Hamilton v. Hamilton*, 10th Dist. Franklin No. 14AP-1061, 2016-Ohio-5900, ¶ 8, quoting *Uretsky v. Uretsky*, 10th Dist. Franklin No. 02AP-1011, 2003-Ohio-1455, ¶ 7. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *Id.*, quoting *In re C.M.*, 10th Dist. Franklin No. 07AP-933, 2008-Ohio-2977, ¶ 50, and *State v. Moreland*, 50 Ohio St.3d

58, 62, 552 N.E.2d 894 (1990). And because parental custody determinations are difficult to make and appellate courts grant wide latitude to the trial court's evaluation of evidence in these cases, plain error in this context is "particularly difficult to establish." *Hamilton* at ¶ 8, quoting *Faulks v. Flynn*, 4th Dist. Scioto No. 13CA3568, 2014-Ohio-1610, ¶ 20.

**{¶12}** Here, Mother observes that the magistrate incorrectly interpreted the 2010 Agreed Entry which designated Mother as E.H.'s legal custodian. In the July 2021 decision, the magistrate wrote, "There has never before been a legal determination regarding custody. Father's initial filing with the court was only for parenting time which was granted through an agreed entry. Father later filed a petition for legal custody but withdrew it before the issue was litigated. Therefore, this is an initial determination of legal custody between parents. Therefore, the legal standard is best interest." But the 2010 Agreed Entry clearly designated Mother as E.H.'s "residential parent and legal custodian," which would require an application of the R.C. 3109.04(E)(1) standard.

**{¶13}** However, beyond acknowledging that plain error applies, Mother fails to explain the plain error standard or to advance any concrete evidence showing that the trial court's error rose to the level of plain error. Her analysis is conclusory—explaining that the trial court applied an incorrect standard and then pronouncing that "[t]his constitutes plain error"—without supporting caselaw or any direct argument that the trial court's error satisfies the stringent plain error review standard.

**{¶14}** And, while Mother is correct that the magistrate and the trial court referenced only the best interest legal standard and failed to address whether a change in circumstances had occurred, Ohio courts are not required to utilize specific

statutory language when applying R.C. 3109.04(E)(1). *Nigro v. Nigro*, 9th Dist. Lorain No. 04CA008461, 2004-Ohio-6270, ¶ 6 ("While the better practice would be for a court to explicitly find a change of circumstances before delving into the issue of the best interests of the child, we will affirm a decision where the factual findings of the court support a finding of changed circumstances."); *In re R.S.*, 2d Dist. Clark No. 2010-CA-56, 2011-Ohio-5981, ¶ 25-27 (although express statutory language had not been utilized, a review of the trial court's decision revealed it had weighed the harm versus the benefit by a change in environment).

{¶15} As another factor in our calculus, it is well established in Ohio law that, when applying R.C. 3109.04(E)(1), whether a change in circumstances has occurred is a threshold inquiry that a court must consider before it proceeds to weigh the best interest of the child. *See Wooten v. Schwaderer*, 3d Dist. Union No. 14-08-13, 2008-Ohio-3221, ¶ 4 ("A determination of whether a change of circumstances has occurred is a threshold inquiry that must occur before determining whether a modification would be in the best interest of the child."); *Olesky v. Olesky*, 8th Dist. Cuyahoga No. 82646, 2003-Ohio-5657, ¶ 28 ("The threshold inquiry is whether a change of circumstances occurred since the prior decree that would warrant a change of custody."). In her objections to the magistrate's entry, Mother did not challenge the magistrate's failure to discuss or apply any change in circumstances. Mother's objections simply argued that the change of custody was not in the child's best interest, which may well have led the trial court to believe that the change in circumstances factor was undisputed. The trial court's best interest analysis accordingly represents its effort to address Mother's objections.

**{¶16}** Moreover, the magistrate and the trial court made numerous findings that supported a determination that a change in circumstances occurred, and that the potential harm was outweighed by the benefits of a change of custody. *See Nigro* at ¶ 6; *In re R.S.* at ¶ 25-27. These findings include: (1) E.H. developed severe anxiety associated with Mother; (2) E.H. wished to be placed in Father's custody; (3) Mother is the source of E.H.'s anxiety; (4) E.H. developed a strained relationship with Mother; (5) Mother is on medication for mental health issues; (6) Mother suffers from an autoimmune disorder; (7) Mother has issues with her short-term memory; (8) Mother no longer has a valid driver's license; (9) E.H. has a close relationship with her stepmother and younger brother; and (10) text messages introduced by the parties that reveal a pattern of Mother acting controlling. The record establishes that these circumstances changed since the 2010 Agreed Entry, and the trial court's entry impliedly contains multiple findings that illustrate the change in circumstances and that the benefits of a change of custody outweighed the potential harm.

**{¶17}** We find no manifest injustice in the trial court's failure to explicitly state that it was applying the change in circumstances requirement of R.C. 3109.04(E) in modifying the custody agreement, nor is there evidence in the record to suggest that, had the trial court cited the correct standard, the outcome of the proceedings would have differed. To the contrary, the record is replete with evidence that a change in circumstances occurred since the 2010 Agreed Entry. Accordingly, we find no plain error and overrule Mother's first assignment of error.

## III.

**{¶18}** Next, Mother alleges that the trial court erred when it denied her motion to discharge the GAL and strike the GAL's testimony and report from the record.

8

According to Mother, the GAL should have been discharged because she failed to faithfully undertake her duties as required by law.

**{¶19}** "Appellate courts will not reverse trial court decisions to admit a guardian ad litem's testimony and recommendation unless the trial court abused its discretion." *In re T.C.*, 6th Dist. Lucas No. L-15-1106, 2015-Ohio-3665, ¶ 20, citing *Corey v. Corey*, 2d Dist. Greene No. 2013-CA-73, 2014-Ohio-3258, ¶ 9; *see Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218, 450 N.E.2d 1140 (1983). Therefore, we will not reverse the trial court's judgment unless the court exercised its discretionary judgment over the matter in an unwarranted way or committed legal error. *See Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

**{¶20}** In examining whether a GAL adequately performed his or her job, Sup.R. 48.03(D) delineates the following nonexhaustive list of duties to guide GALs:

(1) Become informed about the facts of the case and contact all relevant

persons;

(2) Observe the child with each parent, foster parent, guardian or

physical custodian;

(3) Interview the child, if age and developmentally appropriate, where

no parent, foster parent, guardian, or physical custodian is present;

(4) Visit the child at the residence or proposed residence of the child in

accordance with any standards established by the court;

(5) Ascertain the wishes and concerns of the child;

(6) Interview the parties, foster parents, guardians, physical custodian,

and other significant individuals who may have relevant knowledge

regarding the issues of the case. The guardian ad litem may require

9

each individual to be interviewed without the presence of others. Upon request of the individual, the attorney for the individual may be present.

(7) Interview relevant school personnel, medical and mental health providers, child protective services workers, and court personnel and obtain copies of relevant records;

(8) Review pleadings and other relevant court documents in the case;

(9) Obtain and review relevant criminal, civil, educational, mental health, medical, and administrative records pertaining to the child and, if appropriate, the family of the child or other parties in the case;

(10) Request that the court order psychological evaluations, mental health or substance abuse assessments, or other evaluations or tests of the parties as the guardian ad litem deems necessary or helpful to the court;

(11) Review any necessary information and interview other persons as necessary to make an informed recommendation regarding the best interest of the child.

**{¶21}** As Mother acknowledges, however, these considerations only serve as general guidelines, and "do not create substantive rights in individual or procedural law." *Kranz v. Kranz*, 12th Dist. Warren No. CA2012-05-038, 2013-Ohio-1113, ¶ 20. "Thus, any non-compliance with the rule is not grounds for reversal." *Miller v. Miller*, 4th Dist. Athens No. 14CA6, 2014-Ohio-5127, ¶ 18; *see In re B.J. & L.J.*, 12th Dist. Warren Nos. CA2016-05-036 and CA2016-05-038, 2016-Ohio-7440, ¶ 57. But "[a] guardian ad litem * * * must discharge her duties with 'independence, objectivity, and fairness' and without conflicts of interest." *King v. Craig*, 9th Dist. Medina No.

12CA0060-M, 2013-Ohio-3070, ¶ 5, quoting former Sup.R. 48(D). "Guardians ad litem are subject to removal for failure to perform their duties in this manner." *King* at ¶ 5.

**{¶22}** Mother criticizes the GAL for neglecting to focus her investigation enough on Mother's home environment, the child's adjustment to Mother's home, the child's current school and community, the child's relationship and interactions with Mother and her half-brother who resided with them, and whether a change in environment would provide more benefit than harm to the child. Mother points to the fact that the GAL never entered Mother's home, never observed the child interacting with Mother, never interviewed the child's half-brother, failed to interview any teacher or administrator of the child's school, did not interview the child's maternal grandmother, and did not interview the therapists who treated E.H. during the pendency of the case. And Mother claims that the GAL failed to sufficiently investigate whether Father had any current mental health or substance abuse issues. Therefore, according to Mother, the GAL did not adhere to Sup.R. 48.03(D)(2), (4), (6), (7), (9), and (10).

**{¶23}** However, on this record, we cannot say that the trial court abused its discretion by considering the GAL's testimony and recommendation. Sup.R. 48.03 provides a list of activities to guide a GAL, and from which a GAL may deviate based on the facts of the case and what he or she determines appropriate under the circumstances. *See In re B.J. & L.J.* at ¶ 57-58. The record shows that the GAL in this case did conduct a number of activities listed in Sup.R. 48.03 based on what she deemed practical and advisable in light of the facts of the case. The GAL met with Mother and E.H. at Mother's home, met with Father and E.H. at Father's home, and

the GAL and E.H. texted regularly and engaged in nearly weekly Zoom meetings. The GAL reviewed records from the ongoing JFS investigation, spoke with the JFS caseworker conducting the investigation, reviewed court records, and reviewed E.H.'s medical and school records. She found no ongoing substance abuse concerns for Father, as following an OVI in 2012, Father began to limit his drinking and eventually stopped drinking altogether. And, the GAL reviewed records from the Blue Ash Police Department. The foregoing facts persuade us that the GAL discharged her duties with "independence, objectivity, and fairness." *See King* at ¶ 5, quoting former Sup.R. 48(D). On this record, therefore, we find nothing to suggest that the court exercised its discretionary judgment in an unwarranted way or committed legal error in deciding to consider the GAL's testimony and recommendation. We accordingly overrule Mother's second assignment of error.

IV.

{¶24} In her third assignment of error, Mother alleges that the trial court erred in granting legal custody of E.H. to Father, based on a finding of fact that runs counter to the manifest weight of the evidence. While she refers superficially to multiple standards of review and various threads of arguments in this assignment of error, the substance of Mother's argument challenges only the trial court's factual finding that Mother denied Father parenting time on Christmas Eve 2020. We will accordingly limit our review to that question. *See* App.R. 16(A)(7).

{¶25} Appellate courts review trial court orders awarding, modifying, or terminating legal custody for an abuse of discretion. *In re T.J.*, 10th Dist. Franklin Nos. 10AP-201 and 10AP-202, 2010-Ohio-4191, at ¶ 14. And when reviewing challenges to a trial court's finding of fact, we "must accept the trial court's findings of

fact if they are supported by some competent, credible evidence." *State v. Ruberg*, 1st Dist. Hamilton Nos. C-120619 and C-120620, 2013-Ohio-4144, ¶ 10. Mother does not contest the facts underlying the trial court's determination that she denied Father parenting time, but rather challenges the conclusion itself. All parties agree that Father informed Mother that, due to his work schedule, he would not be able to pick E.H. up at the designated time on Christmas Eve and requested a modification. After Mother refused to accommodate Father's work schedule, Father communicated to E.H. directly that pick-up on Christmas Eve would be closer to 12:30 p.m. as opposed to 12:00 p.m. Stepmother arrived to pick E.H. up a little before 12:40 p.m. and lingered outside Mother's house for 50 minutes, waiting for E.H. to leave the house. She knocked on Mother's door multiple times and texted Mother. Ultimately, Stepmother left without E.H. to avoid a confrontation with E.H.'s maternal grandmother.

{¶26} The record shows that the trial court considered testimony from Mother, Father, and Stepmother—each of whom testified consistently with the preceding recitation of the timeline and the facts—as well as the language of the 2010 Agreed Entry, to determine that Mother denied Father parenting time to which he was entitled on Christmas Eve 2020. The trial court paid particular attention to the language contained in the Agreed Entry stating, "If Father's work schedule changes, the parties agree that Father shall still get parenting time for three hours every Wednesday, but *will accommodate his work schedule. This is true for all parenting periods listed in this agreement.*" (Emphasis added.) Thus, competent, credible evidence existed to support the court's finding that Mother denied Father parenting

13

time on Christmas Eve 2020. Accordingly, we overrule Mother's third assignment of error.

\* \* \*

**{¶27}** In light of the foregoing analysis, we overrule all of Mother's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**CROUSE, P.J.,** and **ZAYAS, J.,** concur.


Please note:

The court has recorded its entry on the date of the release of this opinion.